**UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| In re : | CHAPTER 13 |
| **DEBORAH W. MADONNA** and **BRUCE L. WILSON,** : | |
| : | Bankruptcy No. 04-13510 KJC |
| Debtors. : | |
| **DEBORAH W. MADONNA**, : | |
| Plaintiff : | |
| v. : | |
| **NATIONS HOME MORTGAGE CORP.** and **OPTION ONE MORTGAGE CORPORATION** : | |
| Defendants : | Adversary No. 04-0933 KJC |

# MEMORANDUM[1]

**BY: KEVIN J. CAREY, UNITED STATES BANKRUPTCY JUDGE**

On March 11, 2004, Deborah W. Madonna and Bruce L. Wilson (together, "the Debtors") filed a joint voluntary petition under Chapter 13 of the United States Bankruptcy Code. On October 2, 2004, Deborah W. Madonna (the "Plaintiff") filed a two-count Adversary Complaint against Nations Home Mortgage Corporation and Option One Mortgage Corporation (the "Defendants").

Count One seeks rescission and damages for violations of the Truth-in-Lending Act, 15 U.S.C. §1601 *et seq*. ("TILA"), alleging that the Defendants failed to: (i) provide required disclosures for adjustable rate loans prior to settlement, (ii) properly disclose certain terms of the

---

[1]This court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b). This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(B) and (K).

loan transactions (particularly, the finance charge), and (iii) provide the required copies of the Notice of Right to Cancel. Count Two seeks damages for violations of the Equal Credit Opportunity Act, 15 U.S.C. § 1691 *et seq.* ("ECOA"), alleging that the Defendants failed to provide credit on the terms requested by the Plaintiff and, instead, significantly changed those terms without advising the Plaintiff.

On April 29, 2005, the Defendants filed a motion for partial summary judgment (docket no. 22)(the "SJ Motion"), seeking dismissal of (i) the claim in Count One regarding improper disclosure of finance charges under TILA, and (ii) the ECOA claim in Count Two. The Defendants have not requested summary judgment on the issues in Count One regarding whether the Defendants gave the Debtors the appropriate disclosures for variable rate loans or the correct number of copies of the Notice of Right to Cancel at settlement.

For the reasons which follow, the Defendants' motion for partial summary judgment will be granted as to the finance charge disclosure claim in Count One, and denied as to the ECOA claim in Count Two.

**Facts**

The pleadings, depositions, affidavits and other evidence submitted by the parties to support or oppose the Summary Judgment Motion establish the following facts:

1. The Plaintiff purchased her residence at One Christian Street, Philadelphia, PA (the "Property") in 1993. (Plaintiff's Deposition 3/17/05 at 11).[2] She lives at the Property with her husband, Bruce Wilson ("Wilson"), although he has never been an owner of the Property. (Pl. Dep. at 11).

2. In August 2002, the Debtors decided to refinance the existing mortgages on the Property. As a result of a search on the internet, the Debtors contacted two mortgage lenders, and

---

[2]The Plaintiff's deposition will be referred to as "Pl. Dep. at ___."

2

ultimately decided to pursue a mortgage with Nations Home Mortgage Corporation ("Nations"). (Wilson Deposition 3/17/05 at 20-22; Pl. Dep. at 13).[3]

3. The Debtors' contact at Nations was Heather Bolgen ("Bolgen") and the Plaintiff's understanding from her conversations with Bolgen was that the loan's interest rate would be a fixed rate in the range of 7.9%. (Pl. Dep. at 18).

4. On or about August 21, 2002, the Plaintiff signed a "Uniform Residential Loan Application" requesting a loan in the amount of $260,000 for a term of 30 years with an interest rate of 10.55% and an "ARM" (adjustable rate mortgage) amortization feature. (SJ Motion, Ex. C). The Application is also signed by Bolgen.

5. On September 13, 2002, the Debtors attended a loan closing in New Jersey. (Pl. Dep. at 30-31; Wilson Dep. at 39-40). At the closing, the Plaintiff signed several documents, including the following:

   a. A revised Uniform Residential Loan Application, that requested a loan in the amount of $251,000 for a term of 30 years with an interest rate of 10.55% and an "ARM" amortization feature (SJ Motion, Ex. D);

   b. A Hazard Insurance Requirements & Authorization (SJ Motion, Ex. E);

   c. A Federal Truth-In-Lending Disclosure Statement, which was also signed by Wilson (SJ Motion, Ex. F);

   d. An Adjustable Rate Mortgage Loan Program Disclosure (SJ Motion, Ex. G);

   e. An Adjustable Rate Rider (SJ Motion, Ex. H);

   f. A Mortgage granting a lien against the Property in favor of Nations to secure the note (described below) from the Plaintiff to Nations, which was also signed by Wilson (SJ Motion, Ex. I);

   g. An Adjustable Rate Note promising to pay Nations the principal amount of $247,000, plus interest (SJ Motion, Ex. J); and

   h. A Uniform Settlement Statement, which was also signed by Wilson (Pl. Dep., Ex. 6).

---

[3]Wilson's deposition will be referred to as "Wilson Dep. at ___."

3

## **Standard - Summary Judgment**

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c), made applicable to this adversary proceeding by Fed.R.Bankr.P. 7056. In a motion for summary judgment, the moving party "always bears the initial responsibility of informing the...court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

Once the moving party has made a proper motion for summary judgment, the burden shifts to the non-moving party, pursuant to Rule 56(e), which states, "[w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." Fed R. Civ. P. 56(e); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). The party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586.

Before a court will find that a dispute about a material fact is genuine, there must be sufficient evidence upon which a reasonable jury could return a verdict for the non-moving

party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). The court must view the facts and draw inferences in a light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255, 106 S. Ct. at 2513-14. "[W]here the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Pastore v. Bell Tel. Co.*, 24 F.3d 508, 512 (3d Cir. 1994). It is not the role of the judge to weigh the evidence or to evaluate its credibility, but to determine "whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

## **Discussion**

A.  Proper disclosure of the finance charge under the TILA.

The Defendants seek partial summary judgement with respect to the claim in Count One alleging that the Defendants failed to disclose properly the loan's finance charge. As part of discovery, the Defendants asked the Plaintiff to identify the closing fees she claimed were "very high" or "unreasonable" and which closing fees and charges should have been included in the finance charge under TILA. (SJ Motion, Ex. K, ¶14). The Plaintiff's response to this interrogatory (SJ Motion, Ex. L, ¶14), which incorporated paragraph 9 of the Complaint, states that the following charges should have been included in the TILA finance charge:

| | |
|---|---|
| Loan Discount Fee | $ 9,880.00 |
| Credit Report Fee | $     12.50 |
| Funding Fee | $     50.00 |
| Tax Service Fee | $     70.00 |
| Application Fee | $   350.00 |
| Underwriting Fee | $   515.00 |
| Flood Cert. Fee | $     12.00 |
| UPS Package Fee | $     25.00 |
| Notary Fee | $     25.00 |

| | |
|---|---|
| Title Insurance Overcharge | $    365.00[4] |
| Interest from 9/18/02 to 10/01/02 | $    801.84 |
| Hazard Insurance (3 months) | $    430.89 |
| Homeowner's Insurance | $ 1,732.00 |
| Total | $14,269.23 |

The Defendants argue that the charges related to property insurance, included on the above list in the amounts of $430.89 and $1,732.00, are not finance charges. TILA's regulation clearly provides that premiums for insurance against loss of or damage to property may be excluded from the finance charge calculation if: (i) "the insurance coverage may be obtained from a person of the consumer's choice, and this fact is disclosed" and, (ii) if the coverage is obtained from or through the creditor, the premium for the initial term of insurance coverage shall be disclosed.[5]  12 C.F.R. §226.4(d)(2) (i) and (ii)(2005). *See also* 15 U.S.C. §1605(c)(2005).

The Plaintiff signed the TILA Disclosure Statement, which stated that she could obtain property insurance from anyone "that is acceptable to the Lender". (Pl. Dep., Ex. 7). Wilson testified in his deposition that he obtained the hazard insurance for the Property from Farmers Insurance Group. (Wilson Dep. at 38-39). The Plaintiff, however, argues that the insurance

---

[4]For the purpose of deciding this Summary Judgment Motion, the Defendants are not contesting that the Plaintiff was entitled to the lower reissue rate for title insurance. This "overcharge" fee was calculated by determining the difference between the title insurance charge that appears on the settlement sheet ($1,799.38) and the proper reissue rate, as claimed by the Plaintiff ($1,434.38). Fees for title insurance are excluded from the finance charge, if they are bona fide and reasonable in amount.  12 C.F.R. § 226.4(c)(7)(i). To the extent the Plaintiff was overcharged, however, only the unreasonable portion of the fee is disclosed as part of the finance charge under TILA. *Johnson v. The Know Financial Group, L.L.C.*, No. 03-378, 2004 WL 1179335, *7-*8, *10 (E.D.Pa. May 26, 2004).

[5]TILA vests the Board of Governors of the Federal Reserve System with the power to promulgate regulations for the interpretation and implementation of the Act. *See* 15 U.S.C. § 1604(a). The TILA regulation, known as "Regulation Z," is found at 12 C.F.R. Part 226.

charges must be included in the finance charge calculation because the Defendants required any insurer selected by the Plaintiff to be "acceptable to the Lender." The Plaintiff claims this "veto power" curbs her right to select an insurer and causes the cost to fall outside the finance charge exception. This argument, however, fails, in light of the language of Regulation Z, which provides that: "A creditor may reserve the right to refuse to accept, for reasonable cause, an insurer offered by the consumer." 12 C.F.R. §226.4(d)(2)(i) n.6 (2005). The insurance charges, therefore, may be excluded from the finance charge. *See Clark v. U.S. Bank Nat'l Ass'n,* No. 03-5452, 2004 WL 1380166, *5 (E.D.Pa. June 18, 2004)(holding that the property insurance cost was properly excluded from the finance charges because the TILA Disclosure Statement stated, "you may obtain property insurance from anyone you want that is acceptable to Ameriquest Mortgage Company.").

The charge identified as "Homeowner's Insurance" on line 1112 of the Settlement Statement, and payable to Farmers Insurance Group, in the amount of $1,732, and the charge identified as three months of hazard insurance premiums on line 1001 of the Settlement Statement, in the amount of $430.89, both fall within the finance charge exception set forth in TILA and Regulation Z, and were properly excluded from the finance charge.[6]

When the insurance charges are removed from the Plaintiff's list of items to be included

---

[6]The amount of $430.89 for three months of hazard insurance is excluded from the finance charge calculation also pursuant to 15 U.S.C. §1605(e) which provides, in pertinent part, as follows:
   (e)   Items exempted from computation of finance charge in extensions of credit secured by an interest in real property.
The following items, when charged in connection with any extension of credit secured by an interest in real property, shall not be included in the computation of the finance charge with respect to that transaction:
....
   (3)   Escrows for future payments of taxes and insurance.

in the finance charge, the total amount is reduced to $12,106.34. The Defendants argue that the TILA Disclosure Statement received by the Plaintiff at closing is based upon prepaid finance charges in the amount of $12,258.84. The Defendants arrive at this figure by subtracting the "amount financed" ($234,741.16), as disclosed on the TILA Disclosure Statement, from the principal amount of the loan, as set forth in the note ($247,000).[7] Because the disclosed prepaid finance charges of $12,258.84 are actually greater than the finance charges as calculated by the Plaintiff, the Defendants have not violated TILA's requirements for finance charge disclosures. 15 U.S.C. §1605(f)(2005).[8] The Defendants' request for summary judgment on this claim in Count One will be granted.

B.  ECOA claim.

In Count Two of the Complaint, the Plaintiff claims that the Defendants violated ECOA by changing significantly the terms of the credit transaction and substituting less favorable terms without notice to the Plaintiff. The Defendants request summary judgment on this claim, contending that the Plaintiff's deposition testimony shows that she did not request specific loan terms and, therefore, there was no "counteroffer" under ECOA. In the alternative, the

---

[7]The Plaintiff argues that the Defendants should not be able to "back into" this number, but should disclose a complete breakdown of the amounts that make up the disclosed "finance charge" of $561,672.80. The disclosed finance charge need not be itemized. 15 U.S.C. §1638(a)(3)(2005).

[8]15 U.S.C. §1605(f) provides, in pertinent part, as follows:
(f)     Tolerances for accuracy
In connection with credit transactions not under an open end credit plan that are secured by real property or a dwelling, the disclosure of the finance charge and other disclosures affected by any finance charge - -
(1)     shall be treated as accurate for purposes of this subchapter if the amount disclosed as the finance charge - -
....
(B)     is greater than the amount required to be disclosed under this subchapter;
....

8

Defendants argue that, even if there was a counteroffer, written notice was not required under ECOA.

The Defendants point to the Plaintiff's deposition testimony in which she admitted that Bolgen never guaranteed a 7.9% rate [Pl. Dep. at 72-73], and in which the Plaintiff indicated that she did not request a loan with specific terms, but rather a loan "with a reasonable rate that would fit within our budget." [Pl. Dep. at 24]. In response, the Plaintiff submitted an Affidavit stating that her discussions with Bolgen prior to settlement led her to believe that she would receive a loan with a fixed interest rate of 7.9%. [Madonna Aff. ¶6]. The Plaintiff also stated that she was told by Bolgen to disregard any figures on the application that were different from the fixed 7.9% interest rate because the figures on the application were just "to get the loan process started." [Madonna Aff. ¶7].

Among other things, ECOA and its implementing regulations set forth certain procedures that lenders must follow when responding to credit applications.[9] The ECOA regulations define the terms "application" and "completed application" as follows:

> Application means an oral or written request for an extension of credit that is made in accordance with procedures used by a creditor for the type of credit requested. ... A completed application means an application in connection with which the creditor has received all the information that the creditor regularly obtains and considers in evaluating applications for the amount and type of credit requested (including, but not limited to, credit reports, any additional information requested from the applicant, and any approvals or reports by governmental agencies or other persons that are necessary to guarantee, insure, or provide security for the credit or collateral).

12 C.F.R.§ 202.2(f)(2005). The Official Staff Commentary to the ECOA Regulations provides further guidance to determine when a potential borrower's "inquiry" becomes an application:

---

[9]The Board of Governors of the Federal Reserve System is authorized "to prescribe regulations to carry out the purposes of [ECOA]." 15 U.S.C. §1691b(a)(1)(2005). Accordingly, the Board implemented regulations known as "Regulation B." 12 C.F.R. §202.1 *et seq.* (2005).

9

> A creditor is encouraged to provide consumers with information about loan terms. However, if in giving information to the consumer the creditor also evaluates information about the consumer, decided to decline the request, and communicates this to the consumer, the creditor has treated the inquiry... as an application and must then comply with the notification requirements under § 202.9.  Whether an inquiry... becomes an application depends on how the creditor responds to the consumer, not on what the consumer says or asks.

Official Staff Commentary, 12 C.F.R. Pt. 202, Supp. I, § 202.2(f), ¶3. The record established by the parties thus far is not sufficient to determine when the Defendants received a "completed application" from the Plaintiff and the terms requested in that application.

The Defendants argue that, even if I were to assume the Plaintiff submitted an application requesting terms different from those ultimately contained in the loan documents, ECOA does not require written notice of a counteroffer that is accepted by the borrower.  Whether a lender is required under ECOA to provide written notice of a counteroffer depends on whether the information being evaluated is a "complete application" or an "incomplete application."  The ECOA Regulations set forth notification requirements as follows:

> §202.9 Notifications
> (a)    Notification of action, ECOA notice, and statement of specific reasons - -
>   (1)    When notification is required.  A creditor shall notify an applicant of action taken within:
>     (i)    30 days after receiving a *completed application* concerning the creditor's approval of, counteroffer to, or adverse action on the application;
>     (ii)    30 days after taking adverse action on an *incomplete application*, unless notice is provided in accordance with paragraph (c) of this section;

12 C.F.R. §202.9 (2005)(emphasis supplied).  According to this regulation, written notice of a counteroffer is not required for an incomplete application.  For incomplete applications, lenders may provide written notice of an "adverse action," or comply with the "notice alternatives" (such as sending notice of an incomplete application or orally requesting additional information). 12

10

C.F.R. §202.9(a) and (c). The term "adverse action," as defined in 12 C.F.R. §202.2(c)(1)(i), does not include a counteroffer that the "applicant uses or expressly accepts." 12 C.F.R. §202.2(c)(1)(i)(2005).[10]

However, the same is not true for completed applications. Upon receipt of the completed application, the lender has 30 days to give notice of its decision on the application. There are three types of action a lender might take with respect to a completed application, each triggering a notice requirement: an approval, a counteroffer, or an adverse action. *Newton v. United Companies Fin. Corp.,* 24 F.Supp.2d 444, 459 (E.D.Pa. 1998); *Armstrong v. Nat'l Mortgage Plan/Trust*, 288 B.R. 404, 422 (Bankr.E.D.Pa. 2003). "Notice of an approval can be implicit, by granting the credit requested. There is no provision, however, for implicit notice of either an adverse action or a counteroffer." *Newton,* 24 F.Supp.2d at 460 *citing* Official Staff Commentary, 12 C.F.R. Pt. 202, Supp. I, § 202.9(a)(1), ¶2. Therefore, written notice of an adverse action or counteroffer is required on completed applications.[11] As stated earlier, there is

---

[10] An "Adverse Action" is defined, in pertinent part, as:
(i)   A refusal to grant credit in substantially the amount or on substantially the terms requested in an application unless the creditor makes a counteroffer (to grant credit in a different amount or on other terms) and the applicant uses or expressly accepts the credit offered.

[11] In their Reply Brief, the Defendants argue that two courts in the Eastern District of Pennsylvania have held that a counteroffer accepted by the borrower is not an adverse action requiring written notice under ECOA, citing *Thomas v. Cendant Mortgage*, No. 03-1672, 2004 WL 2600772 (E.D.Pa. Nov. 15, 2004); and *Ricciardi v. Ameriquest Mortgage Co.*, No. 03-2995, 2004 WL 739965 (E.D.Pa. March 15, 2004). While these decisions hold that a counteroffer accepted by the borrower is not an "adverse action" under ECOA, they do not resolve the notice issue as argued by the Defendants. In *Thomas*, the court did not address the notice issue, holding, in pertinent part, that the counteroffer exception did not apply when the borrower did not accept the counteroffer. *Thomas*, 2004 WL 2600772 at *7. In *Ricciardi*, the court determined that the lender provided appropriate notice of the counteroffer under ECOA by presenting the borrower with a "Borrower's Acknowledgment Form" at closing that "clearly set forth the originally requested terms and the final terms of the loan." *Ricciardi*, 2004 WL 739965 at *4. These cases do not support the Defendants' position that written notice of a counteroffer is not required under ECOA.

11

an issue of material fact regarding when the Plaintiff's application became complete and what terms were finally requested. The Defendants' request for summary judgment as to Count Two will be denied.

An appropriate order follows.

BY THE COURT:

KEVIN J. CAREY
UNITED STATES BANKRUPTCY JUDGE

Dated: November 21, 2005

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | CHAPTER 13 |
| **DEBORAH W. MADONNA** and **BRUCE L. WILSON,** | : : : | |
| | : | Bankruptcy No. 04-13510 KJC |
| Debtors. | : : | |
| **DEBORAH W. MADONNA**, Plaintiff | : : : | |
| v. | : : | |
| **NATIONS HOME MORTGAGE CORP.** and **OPTION ONE MORTGAGE CORPORATION** | : : : | |
| Defendants | : | Adversary No. 04-0933 KJC |

### ORDER

**AND NOW,** this 21st day of November, 2005, upon consideration of the Motion for Partial Summary Judgment filed by Nations Home Mortgage Corporation and Option One Mortgage Corporation (the "Defendants")(docket no. 22), and the response by Deborah Madonna (the "Plaintiff") thereto, and after oral argument, and for the reasons set forth in the accompanying Memorandum, it is hereby **ORDERED** that:

1. The Defendants' motion for partial summary judgment with respect to Count One is hereby **GRANTED**, in part, and judgment is entered in favor of the Defendants and against the Plaintiff with respect to any alleged failure to disclose any finance charges in violation of the Truth-in-Lending Act, 15 U.S.C. § 1601, *et seq.*, in Count One of the Plaintiff's Complaint;

2. The Defendants' motion for partial summary judgment with respect to the claims

under the Equal Credit Opportunity Act, 15 U.S.C. §1691 *et seq*, in Count Two of the Plaintiff's Complaint is hereby **DENIED**;

AND, it is further **ORDERED** that a pre-trial conference will be held on **January 18, 2006** at 2:00 p.m. in Bankruptcy Courtroom No. 1, Robert N.C. Nix Federal Building & Courthouse, 900 Market Street, Second Floor, Philadelphia, Pennsylvania.

BY THE COURT:


KEVIN J. CAREY
UNITED STATES BANKRUPTCY JUDGE

Copies to:

Deborah W. Madonna
1 Christian Street, Unit 1
Philadelphia, PA 19147

David A. Scholl, Esquire
Regional Bankruptcy Center of Southeastern Pennsylvania
Law Office of David A. Scholl
6 St. Albans Avenue
Newtown Square, PA 19073

Alan C. Gershenson, Esquire
James A. Timko, Esquire
Blank Rome LLP
12 Four Penn Center Plaza
Philadelphia, PA 19103

William C. Miller, Esquire
(Chapter 13 Trustee )
111 S. Independence Mall
Suite 583
Philadelphia, PA 19106

2

Frederic J. Baker, Sr., Esquire
Senior Assistant United States Trustee
833 Chestnut Street, Suite 500
Philadelphia, PA 19107

Timothy B. McGrath, Clerk, U. S. Bankruptcy Court
Pamela Blalock, Courtroom Deputy Clerk